No.——

**First Circuit**

——

**TRIMBLE v. GULF LUMBER COMPANY**

——

(January 7, 1927. Opinion and Decree.)

——

(*Syllabus by the Editor*)

1. Louisiana Digest—Master and Servant —Par. 160 (a), 160 (j).

Where the preponderance of the evidence of physicians shows that the plaintiff, an injured employee suing for compensation under the Employers' Liability Act, No. 20 of 1914, is really a shrewd malingerer who did not suffer the disability complained of, his demands will be refused.

(The recent amendment of Act 20 of 1914 is Act 85 of 1926.—Editor's note.)

Appeal from the District Court of Vernon Parish. Hon. Hal A. Burgess, Judge.

Action by John Trimble against Gulf Lumber Company.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

Fern M. Wood, Hardin, Hardin & Cavanaugh, of Leesville, attorneys for plaintiff, appellee.

Thompson & Ferguson, of Leesville, attorneys for defendant, appellant.

LECHE, J. Plaintiff sues for compensation at the rate of 65 per cent of his daily wage of two and 40-100 dollars, for 400 weeks, on account of permanent total disability to do work of any reasonable character. His petition describes the injury as "a fall to the floor and a shock or strain at once producing very serious hemorrhoids or piles; an injury to the back, breaking three ribs and straining the entire muscular system, leaving plaintiff very nervous and helpless".

The plaintiff as a witness gives the following account of the injury and the manner in which it was inflicted: He was working in the yard, banking lumber for the Gulf Lumber Company, on Friday, August 21, 1925, about two o'clock in the afternoon. He and a fellow laborer had picked up a wet and heavy piece of lumber, four by six, twenty feet long, each holding an end of same, when his fellow laborer fell through a crack in the floor, dropped his end, the jar or jerk pulling plaintiff down, and thereby hurting his left arm and part of his back. He says that when he fell down he stayed down and that he did not work any more since. He then informed his foreman that he was hurt and went to Dr. Carroll, the sawmill physician, who fixed him up, and he went home. He went back to Dr. Carroll the next day, Saturday, and the doctor again fixed him up. He says then that on Sunday morning he started passing blood and went in a car (an automobile) to call on the doctor. He then stayed in bed at home until now when he could get about. He says further that he passed blood for three or four weeks. He began to work for defendant in 1920, lived at Fullerton until he moved to Leesville, that he has since been treated by Dr. Willis and Dr. Talbot. He further says that he is unable to work, that his arm was broken, but that Dr. Carroll said his arm was not broken. He was earning two and 40-100 dollars a day, and he drew money as compensation from defendant for ten weeks after the accident.

Dr. Carroll says that plaintiff called on him for medical advice and assistance, that

the symptoms complained of were entirely subjective, that he could discover no objective symptoms of any injury to plaintiff. He however reported plaintiff's complaint to the office of defendant company, but made no recommendation as to the payment of compensation. In this condition of doubt as to whether plaintiff had really been injured, the doctor prescribed liniments and lotions for him as placebos. This manner of treatment was continued for some time, and in the meanwhile defendant advanced money to plaintiff in sums of one and two dollars at a time, until he disappeared from the sawmill surroundings and moved to Leesville.

After plaintiff moved to Leesville, some time in November or the first part of December, he consulted Dr. Willis and Dr. Talbot, who treated him. Dr. Willis, as a witness, depended largely, if not entirely, in his treatment of the plaintiff from the history of the case as given to him by plaintiff himself. He found, however, the muscles of plaintiff's left arm slightly enlarged and some adhesion of the bones of the elbow interfering with the rotating of his arm. He believed that the sensitiveness of the muscles and the bleeding complained of might have been produced by an infection of the prostate gland and he also thought that plaintiff had muscular rheumatism from some local infection. He mentioned gonorrhea as the most frequent cause of enlargement and infection of the prostate gland, but he says there are other causes, but he did not think it came from the accident by which plaintiff claims to have been injured.

Dr. Talbot had recently made a second examination of the plaintiff and said he could find none but subjective symptoms. He did, however, find that plaintiff's arm was abnormal and that his power to rotate the same was limited. He said he found no broken ribs and that plaintiff in giving him a history of the case made no complaint of having been injured about the ribs.

Besides Dr. Carroll, five other reputable physicians testified that they had examined plaintiff carefully and thoroughly and had observed him with a view of determining whether he was really suffering from the alleged injury or was merely feigning. They were all of the opinion and most of them were convinced that plaintiff was a shrewd malingerer.

As to the law of the case, plaintiff refers to two decisions of the Supreme Court, wherein it was held substantially that where an employer pays compensation to an employee who has been injured, it will be presumed that he did so knowingly and it is an acknowledgment on his part that compensation is due. These decisions can have no application here for the reason that no compensation was ever paid as such by the defendant to the plaintiff. For some time after plaintiff had complained of an injury defendant was unable to ascertain whether plaintiff was really entitled to compensation, and pending the ascertainment of that fact it advanced plaintiff in sums of one and two dollars, not amounting to the compensation claimed, for the purpose of enabling plaintiff to provide absolute necessities of life, an amount approximating sixty-five dollars, from August 21 to November 10, 1925. It would be unconscionable to construe this act of humanity on the part of defendant as an acknowledgment of an obligation for which it is not responsible.

Plaintiff in his petition claimed that he had suffered from broken ribs. There is no evidence even on the part of plaintiff himself that any such injury had been in-

flicted. His petition says nothing of a broken or sprained arm and, strange to say, towards the close of the trial the main question in the case seemed to be whether he had been injured in his left arm. A large preponderance of medical opinion is that the arm is normal and uninjured.

We do not believe that plaintiff is entitled to compensation and for these reasons the judgment appealed from is avoided and reversed and plaintiff's demand is rejected at his costs.